UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHOEBACCA, LTD.,              )
                              )
         Plaintiff,           )
                              )     CIVIL ACTION NO.
VS.                           )
                              )     3:17-CV-0473-G
K-2 CORPORATION a/k/a K2 SPORTS, )
                              )
         Defendant.           )

MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss (docket entry 8) for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and in the alternative, lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  For the reasons stated below, the defendant's motion is granted.

I.  BACKGROUND

A.  Factual Background

The plaintiff, Shoebacca, Ltd. ("Shoebacca"), brings this suit against the defendant, K-2 Corporation ("K2"), for claims of fraud, negligence, and detrimental reliance related to a contractual agreement between the parties for the purchase and sale of shoes.  Notice of Removal, Exhibit A2 ("Original Petition") ¶¶ 9, 14-17

- 1 -

(docket entry 1).  Shoebacca is a wholesaler and retailer of sports shoes and apparel. *Id.* ¶ 7.  K2 is primarily engaged in the business of manufacturing sports shoes and apparel.  *Id.* ¶ 8.  On December 18, 2013, Shoebacca and K2 entered into a contract titled "Retail Dealer Agreement" ("the Agreement") governing all K2 product orders made by Shoebacca.  Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") at 1 (docket entry 8).  The Agreement contains both a forum selection and an arbitration clause, stating that all disputes arising under the Agreement are to be resolved by arbitration in the state of Washington.  Appendix In Support of Shoebacca Ltd.'s Response and Objection ("Appendix In Support"), Exhibit 2 ¶ 7.5 (docket entry 12).

Shoebacca claims that as direct inducement to enter into a contract with K2, K2 promised several benefits to Shoebacca, such as allowing Shoebacca to participate in sponsorship to promote its brand.  Original Petition ¶ 9.  Based on these promises, Shoebacca purchased K2 products at prices higher than what it would have otherwise paid.  *Id.* ¶¶ 10-11.  However, Shoebacca alleges that K2 has since failed to honor any of its promises, leaving Shoebacca with a large inventory of shoes for which it has overpaid.  *Id.* ¶¶ 11-14.

### B.  Procedural Background

On January 11, 2017, Shoebacca filed suit in the 162nd Judicial District of Dallas County, Texas, asserting claims for fraudulent inducement, fraud, negligence,

and detrimental reliance against K2. *Id*. ¶¶ 14-17; Notice of Removal ¶ 1. On February 20, 2017, K2 timely removed the action to this court based on diversity of citizenship jurisdiction.[1] Notice of Removal at 2. K2 then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue due to the forum selection and arbitration clauses in the Agreement. Motion to Dismiss at 1. Alternatively, K2 also seeks dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 1, 5. Shoebacca subsequently filed a response to K2's motion to dismiss, to which K2 filed a timely reply. Plaintiff's Objections to Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(3) and 12(b)(1) and Brief in Support ("Response") (docket entry 11); Defendant K-2 Corporation's Reply to Plaintiff's Response to Defendant's Motion to Dismiss ("Reply") (docket entry 18). The motion is now ripe for decision.

## II.  ANALYSIS

### A  Legal Standard

When faced with a motion to dismiss based on an arbitration clause, the Fifth Circuit has yet to explicitly decide whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule. *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3

---

[1] Shoebacca is a Texas business entity with its principal place of business in Texas, while K2 is an Indiana corporation with its principal place of business in Washington. Notice of Removal at 2. K2 maintains that the amount in controversy exceeds $75,000, which Shoebacca does not dispute. *Id.*

(5th Cir. 2010); see also *Murchison Capital Partners, L.P. v. Nuance Communications, Inc.*, 625 F. App'x 617, 626-27 (5th Cir. 2015) (noting that the defendant "would have been entitled to prevail on a Rule 12(b)(1) or 12(b)(3) motion to dismiss the case because the dispute is covered by the arbitration clause."). Without deciding whether Rule 12(b)(3) or 12(b)(1) is the proper rule here, the court first analyzes the pending motion under Rule 12(b)(3) as it is the basis of the defendant's primary argument.[2] *McGee v. Western Express, Inc.*, No. 3:15-CV-3673K, 2016 WL 1622632, at *2 (N.D. Tex. Apr. 5, 2016) (Horan, M.J.) ("[W]ithout deciding whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule here, because the Agreement's arbitration clause contains a forum selection clause, the undersigned will analyze the pending motion under Rule 12(b)(3)."), *report and recommendation adopted*, No. 3:15-CV-3673-K, 2016 WL 1627662 (N.D. Tex. Apr. 22, 2016). Because the court concludes that the instant case is properly dismissed for improper venue under Rule 12(b)(3), it does not reach the defendant's 12(b)(1) argument.

On a Rule 12(b)(3) motion, the plaintiff has the burden of proving that the chosen venue is proper. *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002). When reviewing the facts, "the court must accept as true all allegations

---

[2] The court also notes that Shoebacca did not raise any arguments as to the propriety of Rule 12(b)(1) or 12(b)(3). Accordingly, Shoebacca has waived any argument of this sort. *Fruge v. Amerisure Mutual Insurance Company*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise an argument before the district court waives that argument.").

in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Services Company v. Modec (USA), Inc.*, 240 Fed. App'x 612, 615 (5th Cir. 2007) (per curiam). Moreover, on a Rule 12(b)(3) motion, the court may look outside of the complaint and its attachments and review extrinsic materials, including affidavits.[3] See *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Burkitt v. Flawless Records, Inc.*, No. CIV. A. 03-2483, 2005 WL 6225822, at *4 (E.D. La. June 13, 2005) ("Unlike a Rule 12(b)(6) motion, . . . a court may consider extrinsic materials, including affidavits and other materials, in determining whether venue is proper."). Conflicts in the parties' affidavits must also be resolved in favor of the plaintiff. *CIT Group/ Commercial Services, Inc. v. Romansa Apparel, Inc.*, No. 3:02-CV-1954-P, 2003 WL 169208, at *2 (N.D. Tex. Jan. 21, 2003) (Solis, J.).

B. Application

Determining whether parties should be compelled to arbitrate a dispute involves two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of the arbitration agreement. *Graves v. BP America, Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (per

---

[3] Shoebaca filed evidentiary objections pertaining to the affidavit of Shawn O'Shea, which K2 attached to its reply. *See* Shoebacca's Objections to K2's Evidence Supporting Its Reply to Showbacca's Response to Its Motion to Dismiss (docket entry 20). However, "because the court did not find it necessary to rely on this evidence in support of its decision, these objections are overruled as moot." *Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 753 (N.D. Tex. 2013) (Fish, J.), *aff'd*, 752 F.3d 627 (5th Cir. 2014).

curiam). Shoebacca argues that venue in this court is proper because the dispute at issue falls outside the scope of the arbitration clause and is therefore not subject to its terms. Response at 2-5. Because Shoebacca does not dispute the validity of the arbitration clause, see *id.*, but merely the clause's application to its claims, this court need only determine whether Shoebacca's claims are within the scope of the Agreement's arbitration clause.

When deciding whether the parties agreed to arbitrate the dispute in question, courts generally apply state law principles of contract construction. *Coffman v. Provost * Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 724 (E.D. Tex. 2001), *aff'd sub nom. Coffman v. Provost Umphrey LLP*, 33 Fed. App'x 705 (5th Cir.), *cert. denied*, 537 U.S. 880 (2002). However, in doing so, courts must give deference to the federal substantive law of arbitrability, which applies to any arbitration agreement within the coverage of the Federal Arbitration Act ("FAA"). *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983). In addition to maritime transactions, the FAA applies to written arbitration agreements in contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, K2 accordingly establishes that the FAA applies to the instant case because it is undisputed that this case involves interstate commerce. Motion to Dismiss at 2-4.

The FAA declares a liberal federal policy in favor of arbitration. *Moses*, 460 U.S. at 24. Under the FAA, any doubts regarding the scope of an arbitration clause

should be resolved in favor of arbitration, and courts should rule in favor of arbitration unless the agreement does not permit any interpretation that would cover the dispute at issue. *Pennzoil Exploration and Production Company v. Ramco Energy Limited*, 139 F.3d 1061, 1067 (5th Cir. 1998). As a result, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *United of Omaha Life Insurance Company v. Cook Children's Medical Center*, No. CIV.A. 3:01-CV-2816-G, 2002 WL 34502718, at *3 (N.D. Tex. Jan. 17, 2002) (Fish, J.) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Despite this deference to arbitration, however, "a party may not be required to arbitrate a dispute that it did not agree to arbitrate, and the controversy must come within the contract's arbitration provision before the court can order arbitration." *Id.* at *3 (citations omitted).

Here, Shoebacca points to the section of the arbitration clause that reads, "[a]ll disputes *arising under* this Agreement shall be resolved by arbitration," to prove that its claims do not come within the contract's narrow arbitration provision. Response at 3 (emphasis added). In determining the scope of an arbitration clause, courts have distinguished between "narrow" and "broad" arbitration clauses. *Pennzoil*, 139 F.3d at 1067. Narrow clauses only require arbitration of claims that "arise out of" or "under" the agreement. *Ryan v. Thunder Restorations, Inc.,* No. CIV.A. 09-3261,

2011 WL 2680482, at *3 (E.D. La. July 8, 2011) (citing *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed. App'x 188, 192 (5th Cir. 2009)). The scope of a narrow clause is limited to those disputes that "relate to the interpretation and performance of the contract itself." *Id.* Conversely, broad arbitration clauses contain the language "in connection with" or "relating to." *Pennzoil*, 139 F.3d at 1067. Unlike narrow arbitration clauses, broad clauses "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.*

The court agrees that here the Agreement's arbitration clause is a narrow one, given that it only refers to disputes "arising under" the Agreement without the addition of any broader terms. Appendix In Support, Exhibit 2 ¶ 7.5. Based on this premise, Shoebacca characterizes the dispute at issue as one specifically involving a wholesale purchase from K2 and therefore entirely unrelated to the Agreement which, according to Shoebacca, only applies to retail purchases. Response at 1, 5. In reply, K2 alleges that this wholesale-retail distinction is an artificial one as there was nothing to distinguish Shoebacca's wholesale purchases from its retail purchases on its order form (the same order form used for all retail purchases), and also because Shoebacca requested the disputed purchase to be shipped to Shoebacca.com, the location it had designated for its retail orders. Reply at 2-3.

Even accepting Shoebacca's wholesale designation as true, however, the court is not persuaded that the transaction at issue is outside the scope of the Agreement. Shoebacca's argument is specifically based on the section of the contract that reads: "During the term of the Retail Dealer Agreement entered into between K2 Sports ('K2') and Retail Dealer, Retail Dealer is authorized to . . . display, promote, and sell K2 Products to *end users only*. . . . " Appendix In Support, Exhibit 2 ¶ 1.1 (emphasis added). Based on this language, Shoebacca contends that the Agreement *excludes* wholesale transactions from its terms; that the Agreement "intended to govern the parties [sic] retail sales only." Response at 4-5. However, as K2 duly highlights, Shoebacca's interpretation is in direct contradiction with the Agreement's subsequent provision stating that *all* K2 product orders are subject to the terms and conditions of the Agreement. Reply at 1-2. While the contract clearly does not authorize the sale of K2 products to a party other than an end consumer, this prohibition is in itself a term and condition of the contract. Read together with the section explicitly stating that the contract governs all K2 product orders, Shoebacca's interpretation -- that wholesale transactions are excluded from the terms of the Agreement -- flies in the face of a logical reading of the contract. See *Thunder Restorations, Inc.*, 2011 WL 2680482, at *4 (noting that courts should employ the standard rules of contract construction to reach an interpretation that gives a reasonable and effective meaning

- 9 -

to all the terms in an agreement and avoid any interpretations that are inconsistent or absurd).

Shoebacca also contends that neither party intended the transaction in question to be governed by the Agreement, but cites no authority in support. Response at 5-6. Nonetheless, the court assumes *arguendo* that Shoebacca draws on case law establishing that the FAA's presumption in favor of arbitrability can be overcome with clear evidence that the parties did not intend the claim to be arbitrable. See, *e.g.*, *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

Although Shoebacca provides affidavits by the parties involved in the wholesale negotiations stating that neither party intended their wholesale transactions to be governed by the Agreement, see, *e.g.*, Appendix In Support, Exhibit 1, at 2, these statements were made only after the arbitrability dispute arose and are again in direct conflict with the plain language of the contract, which clearly states that all purchase orders are subject to the Agreement. See *Cutter & Buck, Inc. v. Genesis Insurance Company*, 306 F. Supp. 2d 988, 1012 (W.D. Wash. 2004) (explaining that under Washington law, courts should not consider extrinsic evidence that modifies or contradicts the terms of an otherwise unambiguous contract), *aff'd*, 144 Fed. App'x 600 (9th Cir. 2005).[4]

---

[4] The court cites Washington law in interpreting contracts pursuant to the Agreement's choice of law clause. *See* Appendix In Support, Exhibit 2 ¶ 7.5.
(continued...)

The core of Shoebacca's argument is that Shoebacca's claims are outside the scope of the Agreement's arbitration clause because they involve a wholesale transaction rather than a retail transaction. However, based on the plain language of the contract providing that it covers all purchase orders, Shoebacca has not furnished the court with clear evidence that the parties did not intend for the claim to be arbitrable. Therefore, Shoebacca has failed to overcome the presumption in favor of arbitration and prove that the chosen venue is proper.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is **GRANTED**.

**SO ORDERED**.

July 21, 2017.

                                         *C. Joe Fish*
                                         A. JOE FISH
                                         **Senior United States District Judge**

---

    [4](...continued)
However, the same conclusion would result if Texas law were to apply. See *First Bank v. Brumitt*, No. 15-0844, 2017 WL 1968830, at *10 (Tex. May 12, 2017) (noting that "[e]xtrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated.") (quoting *Anglo-Dutch Petroleum International, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011)).